## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINCOLN LIFE ASSUR. CO., | : | Civil No. 3:19-CV-1769 |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| GARY SAMPSON, et al., | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.      Introduction

"All happy families are alike; each unhappy family is unhappy in its own way."[1]

Tolstoy's observations about the nature of familial strife are a fitting metaphor for this case, an insurance policy interpleader action set against the backdrop of a decidedly unhappy family. The patriarch of this particular unhappy family was Wheeler Sampson. Mr. Sampson passed away on April 10, 2019. At the time of his death, Sampson left an estate that included a home in Jamaica Queens, New York, as well as a life insurance policy with Lincoln Life Assurance Company, which had an accrued death benefit of $26,905.35. This insurance policy death benefit is the

---

[1] Leo Tolstoy, Anna Karenina

corpus of this interpleader action, which calls upon us to resolve the competing claims of family members to this money.

Wheeler Sampson's legacy also included a bitterly divided family. Over the years, the shifting arc of Sampson's affections created discord in his family, discord that is defined by the two protagonists in this lawsuit, Gary Sampson, Wheeler Sampson's son, and Prentis Jackson, Wheeler Sampson's nephew. While our decision today cannot assuage the accumulated wounds that now divide his family, as discussed below, we will honor Wheeler Sampson's February 2019 decision, which we find was competently made, to distribute these death benefits in equal shares to his granddaughters, Valerie and Ashli Sampson, as well as his nephew, Prentis Jackson.

## II.    **Statement of Facts and of the Case**[2]

The evidence in the case reveals the following facts: The competing claimants in this litigation are Gary Sampson, Wheeler Sampson's son, and Prentis Jackson, Wheeler Sampson's nephew.[3] As father and son, Wheeler and Gary Sampson

---

[2] This statement of facts reflects the facts as found by this court following the one-day non-jury trial conducted in this case on September 28, 2020. (Doc. 39).

[3] We note that the change in policy beneficiary form that is at issue in this litigation removed Gary Sampson as sole beneficiary and instead substituted Gary Sampson's daughters, and Wheeler Sampson's granddaughters, Valerie and Ashli Sampson, as well as his nephew, Prentis Jackson, as beneficiaries. However, Valerie and Ashli Sampson have disclaimed any interest in actively litigating this matter, both in writing and orally at the time of this non-jury trial. Therefore we will focus on the

reportedly enjoyed a close familial relationship in the early 1990s. At this time of family harmony, the title to Wheeler Sampson's home in Jamaica Queens was placed jointly in the names of Wheeler and Gary Sampson. This amicable father-son relationship was also reflected in the initial death benefit beneficiary designation made by Wheeler Sampson when he acquired a life insurance policy from Lincoln Life Assurance Company. Wheeler Sampson obtained this policy from Lincoln Life on October 24, 1997 and originally named his son, Gary Sampson, as the sole beneficiary on the policy.

It is undisputed, however, that over time father and son became estranged from one another. This mutual estrangement stemmed from many sources. On Wheeler Sampson's part, witnesses testified that he had become concerned about his son's spendthrift ways and inability to manage money. Wheeler Sampson also complained about what he considered to be verbal and physical abuse directed against him by Gary Sampson.

Whatever the sources of this growing disharmony, the discord between Wheeler and Gary Sampson manifested itself long before Wheeler Sampson's death in 2019. In fact, some twenty one years prior to his death, in November of 1998,

---

competing claims of Gary Sampson and Prentis Jackson in this opinion while recognizing that a judgment in favor of Prentis Jackson will also necessarily accrue to the benefit of Ashli and Valerie Sampson.

Wheeler Sampson specifically excluded his son Gary from his will, making no provision for Gary Sampson to inherit his estate. (Def. Ex. 3).

As his affections for his son waned, Wheeler Sampson grew increasingly close to his nephew, Prentis Jackson, a New York Fire Department officer. The two men renewed their acquaintance in 2005 and became increasingly close over the ensuing thirteen years. Further, as Wheeler Sampson turned more frequently to his nephew for support and affection, his relationship with his son continued to deteriorate. By June of 2018, the tension between Wheeler and Gary Sampson came to a head when Gary Sampson, accompanied by an attorney, came to Wheeler Sampson's home and endeavored to obtain the keys to Wheeler Sampson's car as well as a greater measure of control over his father's estate and financial affairs.

The precise tenor of this June 2018 exchange between Wheeler and Gary Sampson, as well as the motivations of Gary Sampson in this episode, are disputed. Some witnesses described Gary Sampson's motivation as purely altruistic and driven by a concern for his father's well-being; other witnesses characterized his conduct as more mercenary in nature. Further, while it is uncontested that the exchange between father and son was angry, the precise nature of their discourse is disputed. For his part, however, Wheeler Sampson characterized his son's conduct as verbally and physically abusive.

4

Regardless of what may have motivated this action on Gary Sampson's part, its effect upon Wheeler Sampson was immediate, uncontested, and profound. Following this June 2018 encounter, Wheeler Sampson retained his own counsel, Caryn Bigus, Esq., and took immediate steps to further disinherit his son. Thus, on August 28, 2018, Wheeler executed a revised will that was prepared by Bigus' firm, which specifically stated his intention that Gary Sampson not receive any portion of his estate, providing as follows:

> 4. If, due to any contingency, any of the bequests under my will or any trust hereunder shall lapse and not be disposed according to the terms of my will, I direct that such share be distributed to those who could inherit from me if I were to die unmarried and a resident of the State of New York; other than to my son, GARY SAMPSON.

> 5. My property shall be disposed of as if my son, GARY SAMPSON, had not survived me. I make no provision for my son, GARY SAMPSON, for reasons best known to me and not out of a lack of love and affection. In no event shall he be entitled to receive any part of my estate pursuant to the provisions of this Will.

(Def. Ex. 4). Wheeler Sampson's August 2018 will also reflected the growing trust and affection which he had conferred upon his nephew Prentis Jackson, who was designated both as the executor of his estate and as a beneficiary under the will. (Id.)

Six months later, on February 15, 2019, Wheeler Sampson took further steps to ensure that his son, Gary, would not receive benefits from his estate when he signed a change of beneficiary form relating to his life insurance policy. (Def. Ex.

5

1). This form removed Gary Sampson as the sole beneficiary on this policy and instead designated these death benefits to be distributed in equal 1/3 shares to Wheeler Sampson's granddaughters, Valerie and Ashli Sampson, as well as his nephew, Prentis Jackson. Sampson's attorneys forwarded this change of beneficiary form, along with other contract change forms, to the insurance company on March 26, 2019, shortly before Wheeler Sampson passed away. (Def. Exs. 1 and 2).

Sampson's attorney who handled these estate matters, Caryn Bigus, testified at the non-jury trial in this case and was a particularly compelling witness. Attorney Bigus had no vested interest in the outcome of any of these beneficiary changes. She had no particular affiliation with either Gary Sampson or Prentis Jackson. Further, Attorney Bigus explained that her legal practice focused on estates and elder care planning matters. Given the nature of her practice, Bigus was particularly sensitive to issues of competence and undue influence as it relates to the elderly clientele she serves.

In this case, Attorney Bigus testified that she met privately with Wheeler Sampson to review the changes in his will and insurance policy beneficiary designations. In the course of these meetings, Attorney Bigus had complete confidence in Wheeler Sampson's competence to make these estate planning decisions. Sampson posed cogent questions, stated his intentions clearly, and consistently indicated a complete understanding of the actions he was taking as well

6

as a firm commitment to undertake these actions disinheriting his son. She had no doubt as to his competence to act, and saw no evidence of any undue, malign influence upon Wheeler Sampson's judgment. Several other witnesses also confirmed that Wheeler Sampson was of sound mind in February of 2019, when he changed these policy beneficiaries from his son to his granddaughters and nephew. These witnesses, who included Prentis Jackson, his wife Vegia, and a family friend of Wheeler Sampson, Ruth Fadlalla, echoed Attorney Bigus' perceptions and consistently described Wheeler Sampson as mentally sharp and alert up until his death.

Having made these changes in his estate and insurance policy distribution, Wheeler Sampson's final months were marked by continuing, deepening mutual acrimony between this father and son. For his part, Wheeler Sampson voiced anger and resentment that Gary Sampson was surreptitiously coming to his house and visiting his spouse, Susan Sampson, who was staying with her father-in-law as he became physically infirm. This growing estrangement was mutual and endured even after Wheeler Sampson passed away in April of 2019.  In fact, at Wheeler Sampson's funeral, several witnesses testified that Gary Sampson openly disparaged his father.

After Wheeler Sampson passed away, Lincoln Life received competing claims on the $26,905.35 death benefit under Sampson's insurance policy from Gary Sampson and Prentis Jackson. Confronted with these competing claims, the

7

insurance company filed this interpleader action and deposited these contested funds with this court. The parties consented to magistrate judge jurisdiction, and we then prescribed a schedule for discovery followed by a one-day non-jury trial on September 28, 2020.

The principal issue at this trial was the validity of Wheeler Sampson's February 15, 2019 change of beneficiary form, which removed Gray Sampson as a beneficiary on this policy and instead designated Prentis Jackson, along with Valerie and Ashli Sampson, as the policy beneficiaries. With the legal dispute between the parties framed in this fashion, as discussed below, we find that Gary Sampson has not carried his burden of proof that his father, Wheeler Sampson, was not competent at the time he executed this change of beneficiary form. Therefore, we will enter judgment in favor of Prentis Jackson in this interpleader action.

## III.   <u>Discussion</u>

### A. <u>Governing Legal Benchmarks</u>

In this case, Gary Sampson challenges the decision of his late father, Wheeler Sampson, to make an *inter vivos* gifts of a $26,000 insurance policy to his nephew and grandchildren by removing Gary Sampson as the sole beneficiary on this insurance policy and replacing him with Prentis Jackson and Ashli and Valerie Sampson as beneficiaries.

8

This interpleader action initially presents us with a potential choice-of-law issue, since this case is brought in federal court in Pennsylvania and Gary Sampson resides in Pennsylvania, but Prentis Jackson, the rival claimant, resides in New York and many of the pivotal events relating to the change of beneficiary occurred in New York where Wheeler Sampson resided until the time of his death. For his part, Gary Sampson, who is proceeding *pro se*, does not address this issue. In turn, Prentis Jackson, who is represented by counsel, assumes that New York law governs this dispute. Thus, "a choice of law question looms on the horizon. Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law." Lucker Mfg., A Unit of Amclyde Engineered Prod., Inc. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994).

In this case, we find that there is no material conflict of laws between Pennsylvania and New York relating to the legal standards that govern this dispute. Rather, in both jurisdictions, the legal validity of such *inter vivos* bequests are judged by clear, precise and well-settled burdens of proof and persuasion, which squarely place the burden of proof and persuasion upon Gary Sampson, the party challenging this beneficiary designation.

As this court has observed when applying Pennsylvania law:

> When an *inter vivos* gift is challenged, weakened intellect is not part of the analysis. Instead, the analysis begins with the donee establishing a prima facie case that the gift was made. In re Clark's Estate, 467 Pa. 628, 359 A.2d 777, 781 (1976); Banko v. Malanecki, 499 Pa. 92, 451

A.2d 1008, 1010 (1982). If the *prima facie* case is established, a presumption arises that the gift is valid. <u>In re Clark's Estate</u>, 359 A.2d at 781; <u>Banko</u>, 451 A.2d at 1010. The burden then shifts to the challenger to rebut the presumption by clear, precise and convincing evidence. <u>In re Clark's Estate</u>, 359 A.2d at 781; <u>Banko,</u> 451 A.2d at 1010. . . . . "[T]he burden then shifts to the donee to show that the gift was free of any taint of undue influence or deception." <u>In re Clark's Estate</u>, 359 A.2d at 781. <u>See also Banko</u>, 451 A.2d at 1010. To carry this burden, the donee must "show that the gift was the free, voluntary and intelligent act of" the donor. <u>In re Clark's Estate</u>, 359 A.2d at 781.

<u>Mony Life Ins. Co. v. Snyder</u>, 275 F. Supp. 3d 516, 530–31 (M.D. Pa. 2017).

Further, when the competence of the donor, in this case Wheeler Sampson, to make a change in beneficiaries is challenged, Pennsylvania law provides that the person attacking the competence of the donor must satisfy exacting legal standards to prevail.

"[W]here mental competency is at issue, the real question is the condition of the person at the very time he executed the instrument or made the gift in question." <u>Sobel v. Sobel</u>, 435 Pa. 80, 254 A.2d 649, 651 (1969). Competency is presumed and the burden is on the challenger to establish otherwise. <u>Id</u>. The challenger must present evidence of incompetency that is clear, precise and convincing. <u>Cardinal v. Kindred Healthcare, Inc.</u>, 155 A.3d 46, 50 (Pa. Super. Ct. 2017). If the challenger presents evidence "tending to show lack of competency for a reasonable time before and after the critical time," the burden of proof shifts "to the person who alleges that the transaction occurred during an interval when the person was mentally competent." <u>Sobel</u>, 254 A.2d at 651. "[A] person's mental capacity is best determined by his spoken words and his conduct, and ... testimony of persons who observed such conduct on the date in question out-ranks testimony as to observations made prior to and subsequent to that date." <u>Id</u>. "[M]ere weakness of intellect resulting from sickness or old age is not legal grounds to set aside an executed contract if sufficient intelligence remains to comprehend the nature and character of the transaction, and no evidence of fraud, mutual mistake or undue

influence is present." <u>Cardinal</u>, 155 A.3d at 50 (internal quotation marks and quoted case omitted).

<u>Mony Life Ins. Co.</u>, 275 F. Supp. 3d at 536.

Moreover, to the extent that Gary Sampson levels a claim of undue influence against his cousin, Prentis Jackson, alleging that Jackson exerted some unfair and undue influence over his father, Sampson, the party advancing this claim of "undue influence has the burden of proof" under Pennsylvania law. <u>In re Estate of Fritts</u>, 906 A.2d 601, 606 (2006). Pennsylvania law further provides that:

> "[U]ndue influence is a 'subtle,' 'intangible' and 'illusive' thing," <u>In re Estate of Clark</u>, 461 Pa. 52, 334 A.2d 628, 635 (1975), "generally accomplished by a gradual, progressive inculcation of a receptive mind," <u>id</u>. at 634. Consequently, its manifestation "may not appear until long after the weakened intellect has been played upon." <u>Id</u>.

<u>Owens v. Mazzei</u>, 847 A.2d 700, 706 (2004).

New York law imposes similar burdens of proof and persuasion upon parties who challenge beneficiary designations based upon claims of undue influence or incompetence. Under New York law:

> "The elements of undue influence are motive, opportunity, and the actual exercise of that undue influence" (<u>Matter of Nofal</u>, 35 A.D.3d 1132, 1134, 826 N.Y.S.2d 828 [3d Dept.2006] [internal quotation marks omitted] ). As direct proof of undue influence is rare, its elements may be established by circumstantial evidence (<u>Matter of Paigo</u>, 53 A.D.3d 836, 839–840, 863 N.Y.S.2d 508 [3d Dept.2008] ).

<u>Kotick v. Shvachko</u>, 130 A.D.3d 472, 473, 14 N.Y.S.3d 8, 9 (2015). "Although undue influence may be proven through circumstantial evidence, such evidence must

be 'of a substantial nature.' " In re Estate of Prevratil, 121 A.D.3d 137, 142, 990 N.Y.S.2d 697, 701 (2014). In New York, the burden of establishing undue influence lies with the person objecting to a bequest and does not shift. However, once the inference of undue influence was established, the beneficiary has the burden to offer a reasonable explanation for the donor's bequest. In re Moran, 261 A.D.2d 936, 936–37, 689 N.Y.S.2d 798, 799 (1999).

As for competency determinations, New York law prescribes standards to determine the competence of a person to change beneficiaries under an insurance contract in terms which closely parallel those set by Pennsylvania law. Thus, "the courts applie[s] the contract standard in holding that a decedent is presumed to have been competent to change the beneficiary of a life-insurance policy" Guardian Life Ins. Co. v. Gilmore, 45 F. Supp. 3d 310, 325 (S.D.N.Y. 2014). Further:

> In contract cases, "New York presumes that a person is 'competent at the time of the performance of the challenged action and the burden of proving incompetence rests with the party asserting incapacity.' " Liberty Life Assurance Co. of Bos. v. Bahan, No. 09–CV–4715, 2010 WL 3431147, at *3 (S.D.N.Y. Aug. 23, 2010) (quoting Sears v. First Pioneer Farm Credit, ACA, 46 A.D.3d 1282, 850 N.Y.S.2d 219, 222 (2007)), aff'd, 441 Fed.Appx. 21 (2d Cir.2011); see also In re DelGatto, 98 A.D.3d 975, 950 N.Y.S.2d 738, 741 (2012) ("[C]ompetence to engage in a transaction is presumed, and the objecting party must prove lack of competence."); In re Nealon, 57 A.D.3d 1325, 870 N.Y.S.2d 578, 580 (2008) ("A person's competency to engage in a transaction is presumed and the party challenging such bears the burden of proving incompetence.").

Guardian Life Ins. Co., 45 F. Supp. 3d at 324.

Thus, Pennsylvania and New York law both presume the competence of a person to make a life insurance policy designation change and place the burden of overcoming that beneficiary change upon the person who is challenging the competence of the decedent who changed beneficiaries. Consequently, Gary Sampson bears the burden of proving that his father, Wheeler Sampson, was not competent to make this decision or was subjected to some undue, malign influence at the time that he executed this change of beneficiary form in February of 2019.

**B.   <u>Gary Sampson's Challenge to the Beneficiary Designation in Favor of Prentis Jackson Fails.</u>**

Judged by these benchmarks, we find that Gary Sampson has failed to prove that Wheeler Sampson lacked testamentary capacity in February of 2019 when he executed the change of beneficiary form that replaced his son with his nephew and granddaughters as policy beneficiaries. Quite the contrary, the great weight of the evidence shows that Wheeler Sampson was fully competent at the time that he changed this policy beneficiary designation, and that his decision to remove his son from this policy beneficiary designation was a considered choice made in the context of many years of growing estrangement between father and son.

On this score, the evidence amply illustrated that over the span of many years, Wheeler and Gary Sampson had grown increasingly distant from one another. This discord between father and son had manifested itself as early as 1998, when Wheeler Sampson had excluded his son from inheriting under his will.  This mutual animosity

was exacerbated in June of 2018 when Gary Sampson attempted, against Wheeler Sampson's desires, to exert greater control over his father's affairs and assets. At the same time that relations between Wheeler and Gary Sampson descended into mutual acrimony, the undisputed evidence shows that Wheeler Sampson began to repose greater confidence and affection in his nephew, Prentis Jackson.

Between August 2018 and February 2019, the disintegration of the relationship between Wheeler and Gary Sampson manifested itself in a series of decisions made by Wheeler Sampson. First, in August 2018, Wheeler Sampson executed a new will reaffirming his desire to disinherit his son and identifying Prentis Jackson as executor and a beneficiary of his estate. Later in February of 2019, Wheeler signed an insurance policy change of beneficiary form which replaced Gary Sampson as policy beneficiary with his daughters, Ashli and Valerie, as well as Prentis Jackson.

These actions reflected a rational response by Wheeler Sampson to a deteriorating personal relationship with his son. Further, Wheeler Sampson was aided in these efforts by his attorney Caryn Bigus, who testified in a particularly persuasive fashion at trial that she deemed Wheeler Sampson to be fully competent at the time he made these decisions. We afford great weight to this testimony for several reasons. First, Attorney Bigus had no vested interest in the outcome of any of these beneficiary changes and was not affiliated with either Gary Sampson or

Prentis Jackson. In short, she was a completely disinterested witness. However, Attorney Bigus' legal practice focused on estates and elder law and, given the nature of her practice, Bigus had an abiding professional interest in ensuring that her elderly clientele were competent to make decisions and free from any undue influences.

Attorney Bigus testified that she met privately with Wheeler Sampson to review the changes in his will and insurance policy beneficiary designations. In the course of these meetings, Attorney Bigus testified that Wheeler Sampson exhibited complete competence to make these estate planning decisions. Sampson posed cogent questions, stated his intentions clearly, and consistently indicated a thorough understanding of the actions he was taking as well as a firm commitment to disinherit his son. She had no doubt as to his competence to act, and saw no evidence of any undue, malign influence upon Wheeler Sampson's judgment.

Attorney Bigus' testimony confirming the competence of Wheeler Sampson was bolstered by numerous other witnesses who also stated that Wheeler Sampson was of sound mind in February of 2019, when he changed these policy beneficiaries from his son to his granddaughters and nephew. These witnesses, who included Prentis Jackson, his wife Vegia, and a family friend of Wheeler Sampson, Ruth Fadlalla, echoed Attorney Bigus' perceptions and consistently described Wheeler Sampson as mentally sharp and alert up until shortly before his death in April of 2019.

Arrayed against the substantial body of consistent and credible evidence confirming Wheeler Sampson's testamentary competence, Gary Sampson presented the testimony of a single witness, his wife Susan Sampson. For her part, Susan Sampson only provided equivocal evidence challenging the mental competence of her father-in-law, stating that near the end of his life Wheeler Sampson would confuse his son and nephew in conversation. Moreover, even this limited and equivocal testimony was challenged and contradicted by both Prentis Jackson and his wife, Vegia, who testified in a credible manner that they had never observed such confusion on Wheeler Sampson's part.

The only other shard of evidence presented by Gary Sampson to challenge his father's mental competence to execute this change of beneficiary form on February 15, 2019 was a cellphone video recorded some six weeks later in late March of 2019 as Wheeler Sampson neared death. That video, which was not timely disclosed in discovery and was only produced at the time of the pre-trial conference in this case, depicted a man whose physical condition had clearly declined, but added little to our understanding of Wheeler Sampson's mental competence weeks earlier when he executed the change of beneficiary form.

This video does not alter our conclusion that Gary Sampson has failed to carry his burden of proof challenging his father's competence to change this life insurance policy beneficiary designation for at least three reasons. First, Gary Sampson failed

16

to timely produce the video in discovery and only revealed its existence at the pre-trial conference on week prior to trial. Jackson's counsel objected to this evidence, citing Gary Sampson's failure to timely disclose the video in discovery. Jackson was wholly justified in doing so, since:

> Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The rule is, by its terms mandatory. Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material."); see also Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996) ("The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that is violation of Rule 26(a) was either justified or harmless.")

Ely v. Cabot Oil & Gas Corp., No. 3:09-CV-2284, 2016 WL 590370, at *7 (M.D. Pa. Feb. 12, 2016). A trial is a search for the truth. In order to protect and ensure this cardinal goal, litigants are required by the rules of civil procedure to timely disclose material evidence, something that did not occur in this instance. When a litigant fails to abide by these rules, and endeavors to turn a search for truth into an evidentiary ambush, exclusion of the prejudicial and late-disclosed evidence is entirely appropriate. Therefore, this video was subject to exclusion entirely due to Gary Sampson's failure to produce the video in a timely manner.

In any event, even if we fully considered this evidence, the video lacked probative value sufficient to overcome the overwhelming proof of Wheeler

Sampson's mental competence in February of 2019 for at least two reasons. First, this evidence lacks probative force because the video was taken some six weeks after Sampson changed his life insurance policy beneficiaries. Thus, the video from late March 2019 has little probative value in ascertaining Sampson's mental state on February 15, 2019 when he signed the change of beneficiary form. In addition, upon close scrutiny, the video does not undermine Wheeler Sampson's mental competence. While the video depicts a man near the end of his life in a greatly reduced physical state, on the video Mr. Sampson can be heard appropriately responding to questions and correctly identifying his granddaughters. Thus, even in late March 2019, as he approached the end of his life, Sampson appeared mentally alert but physically infirm.

Finding that this evidence does not overcome the proof and presumptions in favor of Wheeler Sampson's mental competence at the time that he changed the policy beneficiary designation on this insurance policy in February of 2019, we deny Gary Sampson's request to challenge this change of beneficiary designation of competence grounds. For similar reasons, we further find that Gary Sampson has not presented evidence establishing that his father was undue some undue and malign influence at the time that he made this change in beneficiaries. Quite the contrary, the evidence shows that this decision was entirely consistent with a longstanding series of choices made by Wheeler Sampson to disinherit his son and prevent him

from benefiting financially upon the event of his father's death. Further, Attorney Bigus, who met privately with Wheeler Sampson to discuss these matters, discerned no undue influence being exerted upon the elder Sampson. Moreover, the very nature of this beneficiary change executed by Wheeler Sampson seems to rebut any claim that Prentis Jackson exerted some undue influence in this case. The entire policy death benefit totaled only $26,905.35. The beneficiary change form signed by Wheeler Sampson awarded two thirds of this benefit to his granddaughters. Thus, Prentis Jackson stood to gain only $8,968.45 from this beneficiary change. It strains credulity to believe that Jackson would indulge in some elaborate undue influence upon his uncle for such a meager gain.

Finally, we note that at trial Gary Sampson raised a number of other extraneous matters, complaining that Prentis Jackson improperly reimbursed himself for funeral expenses out of estate assets, allegedly forged estate checks and mismanaged the estate of Wheeler Sampson. We deem these allegations to be matters which fall outside the scope of these proceedings, which relate solely to the question of the testamentary capacity of Wheeler Sampson to change his insurance policy beneficiary designations in February of 2019. Rather, these concerns must be addressed by the state courts in New York in the context of probate matters in that jurisdiction.

In sum, we find that the evidence clearly shows that Wheeler Sampson was mentally competent and reveals that he was not under any undue influence at the time that Sampson changed the beneficiary designation on this life insurance policy to remove Gary Sampson as beneficiary and to distribute these death benefits instead in equal shares to his granddaughters, Valerie and Ashli Sampson, and his nephew, Prentis Jackson. Accordingly, we will DENY Gary Sampson's claim upon these moneys deposited with this court, GRANT Prentis Jackson's claim upon these proceeds, and, consistent with the beneficiary designation signed by Wheeler Sampson on February 15, 2019, award these death benefits in equal 1/3 shares to Valerie Sampson, Ashli Sampson, and Prentis Jackson.

An appropriate order follows.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

20